# UNITED STATES COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

Case No.: 19-cv-80968

PATRICK GLOVER,

    Plaintiff,

vs.

THE DISTRICT OF TRUSTEES
OF PALM BEACH STATE COLLEGE

    Defendant.

_____/

## RESPONSE IN OPPOSITION TO [DE 26] MOTION TO DISMISS

COMES NOW, Plaintiff, PATRICK GLOVER by and through his undersigned attorneys and files this Response in Opposition to Defendant's Motion to Dismiss [DE 26] and states:

## PROCEDURAL HISTORY

This action commenced on July 15, 2019, with the filing of the Initial Complaint. [DE 1]. The First Amended Complaint [DE 16] was filed on September 9, 2019, amending, among other things the name of the Defendant to The District of Trustees of Palm Beach State College, and adding a list of jobs applied for by the Plaintiff and discussion concerning the list of jobs. In the initial Complaint, as well as the First Amended Complaint, Plaintiff places Defendant on notice that it received its right to sue letter from the U.S. Equal Employment Opportunity Commission on April 17, 2019, and the filing of the action occurred within the 90-day period provided in the Notice of Suit rights. [DE 1 ¶12, DE 16 ¶15].

Defendant filed a Motion to Dismiss the First Amended Complaint [DE 18] and attached a copy of the Right to Sue Letter dated April 17, 2019 [DE 18-1]. In the Motion to Dismiss, Defendant argued that the Right to Sue Letter in EEOC Charge No. **15M-2018-00113** should be

considered in the Motion, as Defendant knew and argued that the only box marked was one for "Retaliation" and discussed the student coordinator position noted in the Right to Sue Letter. [DE 18 Page 10, DE 18-1]. Notably, Defendant does not discuss at all the reference to Charge No. 15M-2017-00112 made by Plaintiff within the body of the Charge of Discrimination Charge No. 15M-2018-00113.

On November 27, 2019, this Court entered an Order dismissing the First Amended Complaint without Prejudice, finding among other things that the only box that had been marked was the retaliation box, and thus, Plaintiff should seek to exhaust his remedies with the EEOC as to his race discrimination claim. Defendant however knew that race was one of the bases for the first charge ending in 00112, and remained silent in that regard.

On December 20, 2019, the EEOC issued a Right to Sue Letter concerning Charge 15M-2017-00112. This charge is not only incorporated by reference in Charge 15M-2018-00113, but also provided Plaintiff a Right to Sue in connection with the Race, Sex and Retaliation claims. See **Exhibit A**. Counsel for Defendant was copied by the EEOC in the right to sue letter.

The Second Amended Complaint ("SAC") [DE 24] was filed on December 9, 2019. The action states in pertinent: that on "August 16, 2017, Glover filed a Charge of Discrimination with the Palm Beach County Office of Equal Opportunity under charge number 15M-2017-00112. Glover marked the Race, Retaliation and Sex boxes in the form provided by the EEOC. [DE 24 ¶5]. The SAC attached a copy of the charge and quoted Plaintiff's statements contained within the Charge. [DE 24-1]. The SAC also attaches the second charge [DE 24-2] which is the charge Defendant argued in [DE 18]. On December 23, 2019, Defendant filed again a Motion to Dismiss the Second Amended Complaint. [DE 26]. Despite being on notice of Exhibit A, provided days earlier to counsel for Defendant by the EEOC, and knowing that it had sufficient notice of the

claims raised concerning the failure to provide interviews, despite the qualifications of the Plaintiff and failing to interview and hire Plaintiff despite Plaintiff being well-qualified. Defendant also had knowledge and notice of the Right to Sue and the Discrimination Charge No.: 15M-2018-00113, received by Defendant on April 19, 2019 and dated April 17, 2019, and cited in the initial complaint. Nonetheless, Defendant argues that Plaintiff's action was time barred. As set forth below, the SAC complaint contains adequate allegations concerning the claims at issue, but the Defendant had notice of those allegations. Since the Administrative Remedies have been exhausted as to Charge 15M-2017-00112, Plaintiff will be seeking leave to assert a claim to litigate the claims related to the Right to Sue letter issued by the EEOC on December 20, 2019.

## MEMORANDUM OF LAW AND ANALYSIS

**A. Motion to Dismiss Must be Denied Because the Second Amended Complaint Meets the Pleadings Standards for the Matter to Move Forward**

Pleadings are construed broadly. Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006). In Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511–12 (2002), the United States Supreme Court specifically wrote that the "ordinary rules for assessing the sufficiency of a complaint apply" in Title VII claims, and that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case." Id. The Court found it to be "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." Id. at 512.

The Court in Swierkiewicz states, unequivocally that "imposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain

statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Conley v. Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id., at 47–48; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168–169 (1993)." Id.   The only exception of Rule 8(a) simplified pleading is provided in Rule 9(b), which the United States Supreme Court declined to extend to other contexts beyond fraud and mistake. Id. at 513.   Defendant here is on notice of the position at issue, "Student Conduct Coordinator" [DE 24¶ 11, DE 18 Page 6, DE 18-1, DE 24-1]. Defendant is also aware of the qualifications of the Plaintiff and that those qualifications meet the requirements of the position.   [DE 24 ¶11].   Defendant knew based on the charge number and the Right to Sue letter that this was the position that Plaintiff complained about to the EEOC. [DE 18, DE 18-1].  Defendant also knows it did not hire Plaintiff and instead it hired someone that was not within the protected class of the Plaintiff.  [DE 24 ¶¶ 24, 35].  In fact, Plaintiff alleged that he was not interviewed and not hired for the position, and in fact, he was "treated less favorably than a similarly situated individual outside of his protected class.  In this case, the position, upon information and belief was given to a person that is not an African American male."

      Defendant is on notice and knows the identity and race of the person that was awarded the position of "Student Conduct Coordinator" by the Defendant. In fact, Defendant is fully aware who it hired, has been on notice since the filing of the 2018 charge, while it defended the same charge through the same lawyers, that this was the position Plaintiff argued was the basis for his retaliation claim. [DE 24 ¶¶ 24, 35, DE 24-2, DE 18-1] Allegations in the complaint are viewed in the light most favorable to the plaintiff.   Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268,

1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail...but whether his complaint [is] sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 530 (2011).  Here, the SAC must be construed broadly, and Plaintiff should not be required to plead beyond the standard provided in Federal Rule of Civil Procedure 8(a)(2), as held by Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511–12 (2002).

A Plaintiff survives a motion to dismiss under Rule 12(b)(6) by pleading "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir.2007).  Here, Plaintiff pled in detail his qualifications and the requirements for the job "Student Conduct Coordinator" position, and pled that Defendant did not even provide Plaintiff an opportunity to interview for that position and instead the position was given to a person outside of Plaintiff's protected class.  Unlike Hajiani v. KFC/Taco Bell, 2018 WL 1832970, at *3 (M.D. Ga. Apr. 17, 2018), where the plaintiff did not provide any factual basis to support the claims raised under Title VII.  As opposed to the Middle District of Georgia case, in the Southern District of Florida, the Honorable Judge Marra denied a Motion to Dismiss in a Title VII case where Plaintiff alleged that "Defendant hired an unqualified candidate based on her sex. In the absence of a qualified internal candidate, Plaintiff was eligible to be hired. Because Plaintiff has alleged Defendant hired an unqualified person based on her sex, and he has alleged he was qualified for the position, Plaintiff has stated a valid cause of action." See Pasko v. Town of Davie, 2012 WL 1831810, at *2 (S.D. Fla. May 17, 2012).  Here, Plaintiff went as far as to allege that "individuals that were not black males were hired for the positions applied for by Glover, and more specifically, for the Student Conduct Coordinator position.  Further, given the charge filed with the EEOC, and attached as Exhibit 1, Glover was simply cut from any opportunity to obtain a 40-hour full-time

position, and more specifically, the Student Conduct Coordinator Position that he had applied for, and was completely qualified to obtain." [DE 24 ¶13].  In this case.  much like Pasko, Plaintiff provided all of the factual basis to property assert a valid cause of action.

Defendant's reliance on Williams v. U.S. G.S.A., 2011 WL 1344173, at *4–5 (M.D. Fla. Apr. 8, 2011) is also misplaced in that Williams dealt with a plaintiff that filed a one paragraph gender discrimination count where it was merely alleged that "women controlled the federal sector hiring and employment process." Id.  Here, Plaintiff pleads facts in the general allegations, which are incorporated into Count II, as well as nine additional factual paragraphs.  Therefore, direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory were raised by Plaintiff in connection with the claim related to the person hired outside of his protected class.

The Student Conduct Coordinator is a single position.  Defendant is the employer and is well-aware and has notice of this single position in the college, which Defendant created.  In fact, it is required by Federal law and regulations that Title IX schools, such as Defendant's school, have a Title IX coordinator.  In fact, 34 C.F.R. § 106.8(a) requires the designation of a responsible employee to coordinate efforts to comply and carry the responsibilities related to Title IX complaints and compliance, and requires the recipient, i.e., the school receiving federal funding, to notify all students and employees of the "name, office address and telephone number of the employee or employees appointed" as Title IX coordinators.  Here, Defendant has an obligation to know the identity of the employee it hired, and is on notice, based on the SAC, that the employee it hired for that specific position is the employee outside of Plaintiff's class. [1]  Defendant is

---

[1] All school districts, colleges, and universities receiving federal financial assistance must designate at least one employee to coordinate their efforts to comply with and carry out their responsibilities under Title IX. This person is often, though not always, referred to as a Title IX coordinator. See https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/sex.html

essentially asking this Court to treat the pleading requirement in this case similar to the pleading in fraud cases, by requiring the identification, with specificity of the who, when, where, what and how.  This is simply an arbitrary application of the heightened pleading standard on a discrimination case, and inconsistent with the pleading requirement in discrimination cases would be effectively changed by the court, despite the opinion in Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511–12 (2002).

Next, Plaintiff properly pleads the Title VI claim.  Previously, this Court relying on Russell v. Pub. Health Tr. of Miami-Dade Cty., No. 08-23442-CIV, 2009 WL 936662, *6 (S.D. Fla. Apr. 6, 2009), wrote in [DE 22] that a "plaintiff pleading a Title VI claim must additionally allege that the employer receives federal funds for the primary purpose of providing employment." Id.  This Court discussed that in Russell, the "sole allegation with respect to federal funding was that the employer was supported by federal money." Id.  Here, [DE 24] alleges the following with respect to federal funding:

> Defendant is a recipient of monies from the Federal government that are paid for different program and scholarships that, upon information and belief, are provided for the primary purpose of employing faculty and staff at PBSC to teach courses and implement programs. [DE 24 ¶16]
>
> Plaintiff was qualified for, as detailed in the chart contained in paragraph 11, for the position of Student Conduct Coordinator.  This position, among other things, required Glover to ensure that **due process** was being followed for students, to oversee and manage the responses from PBSC to student of concern, handle matters involving students accused of conduct violations and **U.S. Title IX concerns**.  It is Plaintiffs position that given the

---

Your school is required to publish your Title IX coordinator's contact information in your school's notice of nondiscrimination, typically found in any bulletins, announcements, publications, catalogs, application forms, or other recruitment materials. The Title IX coordinator's contact information should also be prominently posted on your school's website. Title IX coordinators for public school districts can also be found on OCR's coordinators website at http://www.ed.gov/civ-rts-coordinators.  Title IX coordinators for colleges and universities can also be found on the Office of Postsecondary Education's Campus Safety and Security Data Analysis Cutting Tool. For more resources regarding Title IX coordinators visit our Title IX Coordinators page. https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/sex.html

types of responsibilities, including matters related to overseeing certain due process related concerns and U.S. Title IX concerns, federal funding is believed to be utilized to fund this position. [DE 24 ¶22]

Plaintiff properly alleged that federal funds are provided for the primary purpose of employing faculty and staff at PBSC to teach courses and implement programs, and further, that given the types of responsibilities of the position applied for by Plaintiff, including matters related to overseeing certain due process related concerns and U.S. Title IX concerns, federal funding is believed to be utilized to fund this position. Id. These allegations are far from being conclusory and meet, along with the other facts plead in paragraphs 11 through 27 of the SAC, the minimum-pleading requirements to assert a viable claim under Title VI.

Important, the Student Conduct Coordinator position handling Title IX concerns is a position that, as stated above, is required by Federal law for Title IX schools receiving federal funding. Notably, the U.S. Senate this year, in the 116th Congress, in its 1st Session, prepared a bill which provides in pertinent: "(d) Assessment of Title IX Coordinator Support. The Director shall collect relevant data and statistics on all title IX coordinators**, including salary information**, budgets, and primary roles, in order to make recommendations for improving title IX coordinator support." Id. Thus, it is more than reasonable for Plaintiff to allege Defendant receives federal financial assistance for the primary purpose of implementing the program involving the Title IX coordination.

It is apparent that Defendant wishes to expand the pleading requirements of a Title VI action by citing to an Eastern District of New York case from 1991 to claim that Plaintiff is also expected to allege when funds are received. Here, Plaintiff has met every pleading requirement delineated by this Court in [DE 22] in connection with the Title VI claim. First, Plaintiff identified the job he applied for, i.e., Student Conduct Coordinator. [DE 24 ¶22]. Plaintiff lists the

requirements of the position and in a chart, a description of his qualifications and how he fulfill the expected qualifications. [DE 24 ¶11].  Plaintiff alleged facts as to how the discrimination took place [DE 24 ¶¶ 12,13,23-25], and as stated in paragraphs 16 and 22, alleged that Defendant receives federal financial assistance for the primary purpose of providing employment, including describing the responsibilities of the position at issue in relation to federal funding. Id.  Therefore, a viable claim has been raised in connection with the Title VI action.

Defendant wishes for the court to ignore the words "primary purpose" and "implement programs."  What is concerning about Defendant's conclusory argument is that somewhere along the way, Defendant ignores and wishes for this court to ignore that the position at issue involves assisting students with due process and Title IX issues, both matters that involve rights provided by federal law.  A pleading is designed to provide notice, not require a plaintiff to adjudicate its entire case in detail.  See Fed. R. Civ. P. 8(a)(2) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...").

### B. Retaliation Action Relates Back, Dismissal is Not Proper

Even when an amended pleading is filed outside of the applicable statute of limitations, it is timely where "(1) the original pleading was timely and (2) the amended pleading relates back to the date on which the original pleading was filed." Walker v. Fulton County Sch. Dist., 624 Fed. Appx. 683, 685–86 (11th Cir. 2015) citing Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 541 (2010). "An amendment can relate back to the original pleading when it 'asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" Id citing Fed. R. Civ. P. 15(c)(1)(B).

"A critical issue in determining whether an amendment relates back to the original complaint is whether the original complaint gave the defendant notice of the claim asserted in the

amendment." Id quoting Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir.1993). Fed. R. Civ. P. 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same[.]." McLean-Pilliner v. Univ. of S. Florida Bd. of Trustees, 2016 WL 6514104, at *2 (M.D. Fla. Nov. 1, 2016) citing 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1497 (3d ed. 1998); accord United States v. Johnson, 288 F.2d 40, 42 (5th Cir. 1961).

In McLean-Pilliner, the court ruled that the Title VII claims raised in the amended pleading related back to the filing of the original complaint, as the original complaint was a pleading supplying a short and plain statement of the claims for relief, the amendment alleged facts virtually identical to those in amended complaint. Id. Plaintiff here filed the original pleading timely, i.e., on July 15, 2019. [DE 1]. In the original pleading and thereafter, Defendant was placed on notice that this action was filed based on the right to sue letter from the U.S. Equal Employment Opportunity Commission issued on April 17, 2019. [DE 1 ¶12, DE 16 ¶15]. Defendant had notice and in fact, received a copy of the specific right to sue letter dated April 17, 2019 on April 19, 2019. See Stamp and CC on [DE 18-1].

The allegation in original pleading stated the following: "Plaintiff has satisfied all conditions precedent to the filing of this action, as Plaintiff obtained a right to sue letter from the U.S. Equal Employment Opportunity Commission on April 17, 2019, and is filing this action within the 90 day period provided in the Notice of Suit Rights." [DE 1 ¶12]. Hence, at the time this action was served, and counsel for Defendant appeared, Defendant was in possession of the

April 17, 2019 letter [DE 18-1], and knew exactly what the conditions precedent were, knew the letter involved EEOC Charge No.: 15M-2018-00113, knew that said charge number involved the claim of Retaliation concerning the specific position discussed in the charge number, which was also argued by Defendant in [DE 18]. Therefore, Defendant had more than sufficient notice from the Complaint and the letter about the claims at issue,

Unlike Moore, 989 F.2d at 1131, where the original complaint did not refer to new allegations of negligence, and focused on acts that occurred before a surgery, the amended complaint focused on acts that occurred during and after the surgery. Here, the original complaint unequivocally gave notice to the Plaintiff of the specific matter in front of the EEOC, that conditions precedent were met, but also, discusses the claims related to the failure to provide interviews, and failure to provide the opportunity to obtain a position in violation of Title VII. While the First Amended Complaint discussed numerous positions, the Second Amended Complaint focuses on one position, which was known specifically by the Defendant and its counsel based on the receipt of the Right to Sue Letter by Defendant's counsel on April 19, 2019 and based on reference to said letter in the Complaint, and that the action was brought as a result of meeting all conditions precedent based on that specific letter and, thus, the charge discussed therein.

In addition, unlike Walker, 624 Fed. Appx. 683, where the original complaint did not mention protected conduct or adverse actions, here Plaintiff discusses in the Original Complaint the Right to Sue letter from the EEOC, which constituted the protected conduct that gave rise to the claim. Moreover, other than discussing that Plaintiff applied for several positions in the Original Complaint [DE 1 ¶ 8], the Second Amended Complaint alleges that "the Student Conduct Coordinator is one of several positions applied for by Plaintiff, where he was not even given an interview which thereafter resulted in the filing of the charge attached as Exhibit 1." [DE 24 ¶34].

² Moreover, Plaintiff in the Original complaint alleges that he "suffered an adverse employment action as he was not given the opportunity for interviews on the applied for positions, and was not hired for the applied-for positions that Plaintiff was a qualified candidate. Instead, Plaintiff was replaced by a person outside his protected class, i.e., Caucasians, or was treated less favorably than a similarly-situated individual outside his protected class, i.e., a similarly situated Caucasian." The allegation in [DE 1 ¶29] is very similar to the allegation that "Glover suffered an adverse employment action, in that Glover was not given a chance to even interview for the position and was certainly, not given an opportunity to secure the position. The adverse action from PBSC was causally related to the protected expression, in that PBSC continued to limit the hours Glover worked at PBSC, and failed to provide Glover with the opportunity to obtain the position that he was qualified to obtain, solely based on his expression, and complaints of racial discrimination." [DE 24 ¶31].

The Original Complaint and Second Amended Complaint also allege that "Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). [DE 1 ¶27, DE 24 ¶32]. Thus, Count II in the Second Amended Complaint relates back to the Original filing and the motion to dismiss should be denied in this regard as well.

**C. Defendant Impermissibly Seeks a Ruling Akin to Summary Judgment on Causation**

---

² Notably, [DE 24-1] is the EEOC charge referenced within [DE 24-2]. The Right to Sue letter is based on the charge filed as [DE 24-2]. The Right to Sue Letter attached as Exhibit A, issued on December 20, 2019, is based on the EEOC charge filed as [DE 24-1]

In <u>Jones v. Gulf Coast Health Care of Delaware, LLC</u>, 854 F.3d 1261, 1271–72 (11th Cir. 2017), while discussing the causation element of a prima facie case for retaliation, the court explained that "[t]o establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" Id. quoting <u>Kidd v. Mando Am. Corp.</u>, 731 F.3d 1196, 1211 (11th Cir. 2013) "Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." <u>Id</u>. quoting <u>Krutzig v. Pulte Home Corp</u>., 602 F.3d 1231, 1234 (11th Cir. 2010). "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" <u>Id</u>. quoting <u>Hurlbert v. St. Mary's Health Care Sys., Inc</u>., 439 F.3d 1286, 1298 (11th Cir. 2006). "[T]emporal proximity, without more, must be 'very close' " in order to satisfy the causation requirement. Id. at 1272 quoting <u>Thomas v. Cooper Lighting, Inc</u>., 506 F.3d 1361, 1364 (11th Cir. 2007).

Here, despite the fact that the law requires **<u>evidence</u>** of causation, which typically is an issue of fact, and close temporal proximity is generally sufficient circumstantial evidence, Defendant would like this court to skip the part where Plaintiff is given the opportunity to show the evidence of causation, and is asking the court to make a ruling on a motion to dismiss based on what the Defendant argues to be a lack of the otherwise circumstantial evidence. This request is erroneous as a matter of law.

## **<u>CONCLUSION</u>**

Plaintiff has satisfied all conditions precedent to the filing of this action, has properly pled the actions under Title VI and Title VII. Apparently, Defendant takes issues with the recitation of

the facts in the factual background of the SAC. The background concerning how many jobs were applied for by Plaintiff simply goes to the background of the pattern or practice of the Defendant and what resulted in Plaintiff filing the retaliation Charge with the EEOC as discussed in [DE 24-1]. This however is not a basis to dismiss the SAC. As it relates to the claim under Title VI, Plaintiff alleges that the federal funding was "provided for the primary purpose of employing faculty and staff at PBSC to teach courses and implement programs" and more specifically, it is Plaintiff's "position that given the types of responsibilities, including matters related to overseeing certain due process related concerns and U.S. Title IX concerns, federal funding is believed to be utilized to fund" the Student Conduct Coordinator position. Therefore, there is no basis to dismiss Count I of the SAC.

In terms of Count II, there is also no basis to dismiss the claim under Title VII as the SAC contains a short plain statement as permitted by Fed. R. Civ. P. 8, contains sufficient factual allegations and not just mere conclusions, as claimed by Defendant. Moreover, Plaintiff alleged facts consistent with Pasko v. Town of Davie, 2012 WL 1831810, at *2 (S.D. Fla. May 17, 2012) as it relates to the person that was hired by Defendant, i.e., Pasko alleged "Defendant hired an unqualified person based on her sex, and he has alleged he was qualified for the position", while Plaintiff here alleged that he was not interviewed and not hired for the position he was more than qualified for, including specific description of the qualifications and how he fulfilled those qualifications, and in fact, Plaintiff alleged he was "treated less favorably than a similarly situated individual outside of his protected class." Thus, it would be inconsistent with Pasko to dismiss the claim under Title VII based on the argument from Defendant that Plaintiff should identify the race and employee Defendant hired for the specific position at issue. This position is simply

inconsistent with the pleading requirements under the Federal Rules of Civil Procedure and contrary to Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511–12 (2002).

Finally, Plaintiff's claim for Retaliation relates back to the filing of the original complaint, which was timely filed.  Defendant knew the claims were filed based on the Right to Sue letter dated April 17, 2019,  and knew that Plaintiff was bringing this action alleging it complied with all conditions precedent related to the charge discussed in the April 17, 2019 letter.  This was importantly, the same Right to Sue Letter in Defendant's possession as of April 19, 2019 [DE 18-1], and Defendant was unequivocally on notice of the claims contained in the EEOC charge discussed in the letter it received [DE 18-1].   Moreover, the original complaint contained very similar allegations concerning the violations of Title VII, failure to provide interviews and positions.  In addition, Defendant knew this case was based on the retaliatory conduct, and made that argument on [DE 18].  Thus, the actions relate back.  This is especially the case now that Plaintiff received another Right to Sue Letter dated December 20, 2019, concerning the first EEOC charge that was referenced in the body of the EEOC charge that was subject to the April 17, 2019 Right to Sue letter.

Finally, as the court is aware, causal connection is an issue of fact, requires evidence and temporal proximity provides circumstantial evidence of causation.  Thus, the request for dismissal based on lack of temporal proximity is not proper and such dismissal would eviscerate plaintiff's right to a jury trial without considering whether or not the issue is proper for summary judgment.

WHEREFORE, Plaintiff, PATRICK GLOVER, respectfully requests the entry of an Order Denying the Motion to Dismiss the Second Amended Complaint, and all further relief this court deems just and proper.

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on January 6, 2020, a true and correct copy of the foregoing document has been sent via e-mail to all counsel of record.

**Pike & Lustig, LLP**

*/s/ Daniel Lustig*
Michael J. Pike
Florida Bar No.: 617296
Daniel Lustig
Florida Bar No.: 059225
1209 N. Olive Avenue
West Palm Beach, FL 33401
Telephone: (561) 855-7585
Facsimile: (561) 855-7710
pleadings@pikelustig.com

**SERVICE LIST**

Suzanne A. Singer, Esq.
David Acosta, Esq.
Rumberger, Kirk & Caldwell, P.A.
ssinger@rumberger.com
dacosta@rumberger.com
Attorneys for the Defendant